IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM DAVIS, | ) | CASE NO. 5:06CV398 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| MICHELE EBERLIN, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  William Davis ("Davis") petitions this court for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on February 22, 2006.  Davis is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Davis*, Case No. CR 03-04-1064(A) (Summit County 2003).  For the reasons given below the magistrate judge recommends that the petition be granted in part.

I

The state appellate court reviewing Davis's conviction described the following facts as emerging from the testimony of the witnesses at Davis's trial:

> On April 21, 2003, Defendant was indicted with his wife, Justine Davis ("Wife"), for felonious assault, in violation of R.C. 2903.11(A)(1), a second degree felony, and failure to provide for his step-son Edgar Vannoy ("Vannoy"), a functionally impaired person, resulting in serious physical harm, in violation of R.C. 2903.16(A), a fourth degree felony.  A joint trial ensued in October 2003.  Following the State's case in chief, Defendant moved for Crim.R. 29 acquittal.  The court

denied the motion. The defense did not put on any evidence and the jury found Defendant and Wife guilty on both counts. The trial court merged the convictions for purposes of sentencing and sentenced Defendant to the maximum term of eight years for the felonious assault conviction.

*       *       *       *       *

The evidence at trial showed that, in 1998, while attending a government funded day school for children and adults with an IQ under 50, Vannoy was capable of going to the bathroom by himself and eating alone. He could also communicate using some sign language. Two employees who testified implied that Vannoy was happy and healthy during his many years at Weaver School.

Wife and Defendant removed Vannoy from the school in 1998, stating that they were moving to Colorado. While the family did not move, Vannoy was never re-enrolled in a day program, though this would not have personally cost Defendant and Wife any money. Defendant and Wife also did not take Vannoy for regular visits to a doctor or dentist, regardless of the fact that the expenses would have been completely covered by Medicaid.

Approximately five years after Vannoy was removed from Weaver School, Jesse Littleton, who had been living with Defendant, Wife, and Vannoy for a few weeks, called the police to report alleged abuse of Vannoy. The police responded to Defendant and Wife's home on April 3, 2003. They knocked on the front door of the home, and Wife answered, eventually inviting them inside. The officers noted that the house smelled horribly of feces, urine, and garbage. They spent turns outside on the porch in order to get some fresh air.

Wife brought Vannoy down from his upstairs bedroom for the officers to see. Both indicated that he looked like a prisoner of war: very thin, as though he had not eaten enough, and dirty. They tried to communicate with Vannoy, but he merely hid behind Wife and would not in any way respond to the officers. The officers called paramedics to the scene to check on Vannoy's health. Following a Tartar test, the paramedics determined that Vannoy was dehydrated, and transported him to the hospital. Wife rode in the ambulance with Vannoy while Defendant followed in the family car.

Vannoy was admitted to the hospital for two days to combat "life-threatening" dehydration and malnourishment. Records indicate that Vannoy was so emaciated that his bones stuck out, and that his stomach was indented. At 5'5'', he weighed a mere 92 pounds and was described as "severely underweight." He was also anemic, had lacerations on his legs, and dermatitis from an allergic reaction on his arms. The hospital used an IV to hydrate him with two liters of saline, and replenished the essential nutrients he was lacking.

2

Debra Smith ("Smith"), an investigator for the Summit County Board of Mental Retardation and Developmental Disabilities, met with Vannoy at the hospital. "[She] was mortified when [she] first saw him. He was very, very, very thin. Appeared to be very malnourished almost like somebody you would see walking out of a POW camp." She took pictures of Vannoy, including the marks on his back, the protrusion of his rib cage, the indentation in his stomach, and the abrasions and lesions on his legs and toes. She recalled that he had arrived at the hospital in urine and feces soaked clothing.

On April 10, 2003, Dr. Islam Ibrahim met with Vannoy for the first time. In that first week, Vannoy had gained 12 pounds. Dr. Ibrahim prescribed Ensure to help Vannoy gain weight, and cleared out wax impaction in Vannoy's ears. He insisted that an individual should be able to recognize severe dehydration, though maybe not mild dehydration. He also stated that Vannoy's condition was consistent with someone who was not given enough to eat and drink every day, and that the dehydration could not have been caused by the flu which Vannoy had a week prior to his hospital admittance. Left untreated, Dr. Ibrahim indicated that Vannoy's dehydration and malnourishment could have led to death, kidney and liver problems, and changes in Vannoy's mental status. He felt that the hospital was prudent in admitting Vannoy.

Vannoy was immediately placed in the care of a certified foster parent, Lucinda Hill ("Hill"). "When he came, he was very weak, and he had sores on him. He was very thin." She recalled that Vannoy had sores over much of his body, and that he constantly scratched them. He could walk unaided, but he walked with a "stumbly" gait that was very weak. Hill also said that Vannoy could not go to the bathroom by himself. She had to wipe for him in order to prevent him from making a mess.

At the time of trial, Vannoy had gained 46 pounds so that, at 138 pounds, he fell comfortably within the recommended weigh range stated by Dr. Ibrahim. Vannoy could also no longer wear the same clothing, as he gained three sizes.

*State v. Davis*, 2004 Ohio App. LEXIS 3337, 1-2, 8-12 (2004) (footnotes omitted).

On April 21, 2003, the March 2003 term of the Summit County grand jury indicted Davis on one count of felonious assault and one count of failing to provide for a functionally impaired person. On August 28, 2003, a jury found Davis guilty as charged in the indictment.

On September 5, 2003, the court sentenced Davis. At the sentencing hearing, the

3

court found the following pursuant to Ohio Rev. Code § 2929.12:

(1)    heinous cruelty to a human being;
(2)    offender showed no care or dignity to a human being;
(3)    offender gave many years of abominable abuse to the victim;
(4)    inhumane treatment of a human being;
(5)    victim suffered serious psychological and physical harm;
(6)    anything less would demean the seriousness of the offense;
(7)    not to sentence the Defendant to a period of incarceration would not protect society from future crimes by the Defendant; and
       The court further finds the Defendant is not amenable to community control and that prison is consistent with the purposes of O.R.C. 2929.11.

Journal Entry, September 5, 2003, Answer, Exh. 3, p. 1. As a result of these findings,

Davis was sentenced to a term of eight years' imprisonment for felonious assault.[1]

Davis timely appealed his conviction to the state appellate court. In his appeal Davis

raised four assignments of error:

ASSIGNMENT OF ERROR ONE

APPELLANT WAS IMPROPERLY CHARGED AND CONVICTED UNDER THE GENERAL PROVISION FOR FELONIOUS ASSAULT, WHERE THE REVISED CODE CONTAINS A MORE SPECIFIC PROVISION PROVIDING FOR A LESSER DEGREE OFFENSE FOR THE SAME ALLEGED CONDUCT.

ASSIGNMENT OF ERROR TWO

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

ASSIGNMENT OF ERROR THREE

APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

---

[1] The court originally sentenced Davis to a term of eight years' imprisonment for felonious assault and eight years' imprisonment for failing to provide for a functionally impaired person, the sentences to be served concurrently. The court later corrected the entry of sentence *nunc pro tunc* to note that "due to the merger of the offenses, the Court declines to sentence the Defendant on Count 2 . . . ." Journal Entry, October 1, 2003, Answer, Exh. 4.

4

ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED IN ITS JURY INSTRUCTION REGARDING THE
ELEMENT OF "SERIOUS PHYSICAL HARM."

The appellate court overruled Davis's assignments of error and affirmed the judgment of

the trial court on July 14, 2004.

Davis filed a notice of appeal to the Ohio Supreme Court on August 27, 2004.  In his

memorandum in support of jurisdiction Davis raised two propositions of law:

PROPOSITION OF LAW I

A TRIAL COURT DOES NOT HAVE AUTHORITY TO MAKE FINDINGS OF FACT
TO IMPOSE THE MAXIMUM SENTENCE ALLOWABLE UNDER THE LAW.

PROPOSITION OF LAW II

A CRIMINAL DEFENDANT IS ENTITLED TO EFFECTIVE ASSISTANCE OF
COUNSEL.

On December 1, 2004, the Ohio Supreme Court declined jurisdiction and dismissed the

appeal as not involving a substantial constitutional question.

Davis filed a petition for a federal writ of habeas corpus on February 22, 2006.

Davis's petition asserts two grounds for relief:

**Ground one:**  Petitioner's right to due process of law, as guaranteed by the Sixth
and Fourteenth Amendments to the Constitution of the United States of America,
was violated when the trial court usurped the role of the jury by making findings of
fact to sentence Petitioner to the maximum penalty.

**Ground two:**  Petitioner's right to effective assistance of counsel, as guaranteed by
the Sixth and Fourteenth Amendments to the Constitution of the United States, was
violated when appellate counsel failed to raise the issue on appeal that the trial
judge usurped the role of the jury by making findings of fact to sentence Petitioner
to the maximum penalty.

Respondent filed an Answer on May 30, 2006 (Docket #6).  Davis filed a Traverse on

August 8, 2006 (Docket #11).  Thus, the petition is ready for decision.

5

II

*A.    Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction.

> Where an application for a writ of habeas corpus is made by a person in custody
> under the judgment and sentence of a State court of a State which contains two or
> more Federal judicial districts, the application may be filed in the district court for the
> district within which the State court was held which convicted and sentenced him
> and each of such district courts shall have concurrent jurisdiction to entertain the
> application.

28 U.S.C. § 2241(a) and (d).  Davis was convicted in the court of common pleas in Summit

County, and Davis filed his writ of habeas corpus in the Northern District of Ohio.  This

court has jurisdiction over Davis's petition.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

circumstances when the factual basis of a claim has not been adequately developed in

state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary

hearing in the instant case.  All Davis's claims involve legal issues which can be

independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining

state remedies available prior to seeking review of a conviction via federal habeas corpus.

28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v.*

*Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain

available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160

6

(6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Davis has exhausted direct appeals for all his claims.  Because Davis has no remaining state remedies available, his claims have been exhausted.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his or her constitutional claims to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent argues that Davis has procedurally defaulted his first ground for relief. Davis's first ground for relief contends that his right to due process of law was violated when the trial court usurped the role of the jury by making findings of fact necessary to sentence him to the maximum penalty.  Davis has procedurally defaulted this claim because he failed to present this claim to the state appellate court.  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding.  In the instant case, the Ohio Supreme Court did not explain its decision denying jurisdiction over Davis's appeal. When a state court is silent as to the reasons for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  Because Davis did not raise his first ground for relief in the state appellate court, it is assumed that the Ohio Supreme Court refused to take jurisdiction over his appeal for that reason.  Thus, Davis failed to give the Ohio Supreme Court a fair chance to review his first ground for relief.  For this reason, Davis's first ground for relief is procedurally defaulted.

If a habeas petitioner can no longer present his claim to a state court because of a procedural default, he has waived the issue for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray*, 477 U.S. at 485.  Davis fails to show cause and prejudice for this default.  For these reasons the magistrate judge recommends that the

8

court dismiss Davis's first ground for relief.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."

9

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.*  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.*  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Davis's second ground for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Davis argues that appellate counsel was ineffective for failing to raise on appeal the issue that the sentence imposed by the trial judge was unconstitutional because the trial judge usurped the role of the jury by making necessary findings of fact to enhance Davis's sentence beyond the "statutory maximum."  Davis contends that the trial judge's findings were contrary to the holding in *Blakely v. Washington*, 542 U.S. 296 (2004).  Respondent answers that Davis's appellate counsel acted reasonably and competently during Davis's appeal and that Davis's appellate counsel was not constitutionally ineffective for failing to

10

predict the Supreme Court's ruling in *Blakely*.

Defendants have a right to appointed counsel for the first appeal of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), cert. denied, 498 U.S. 1002 (1990).

The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of appellate counsel. *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985). Appellant's counsel is ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; see also *Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance,

11

the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167. Appellate counsel must exercise reasonable professional judgment when determining what issues to raise on appeal. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). The failure to raise an issue on appeal can result in a finding that counsel's performance fell below an objective standard of reasonableness. *See Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (listing considerations for determining whether appellate counsel was ineffective for omitting an issue).

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be

12

prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); see also *Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the proceeding was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Davis satisfies the first prong of *Strickland:*  His appellate counsel's performance fell below an objective standard of reasonableness when counsel failed to argue that Davis's sentence violated the holding of *Blakely*.  The Sixth Circuit has laid out 11 considerations to be taken into account when determining whether appellate counsel's representation fell below an objective standard of reasonable performance:

    (1)    Were the omitted issues "significant and obvious"?
    (2)    Was there arguably contrary authority on the omitted issues?
    (3)    Were the omitted issues clearly stronger than those presented?
    (4)    Were the omitted issues objected to at trial?
    (5)    Were the trial court's rulings subject to deference on appeal?
    (6)    Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
    (7)    What was appellate counsel's level of experience and expertise?
    (8)    Did the petitioner and appellate counsel meet and go over possible issues?
    (9)    Is there evidence that counsel reviewed all the facts?
   (10)    Were the omitted issues dealt with in other assignments of error?
   (11)    Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 171 F.3d at 427-28.  This list provides reviewing courts with factors to consider and is not a mere checklist that may or may not produce a correct "score."  *Id.* at 428.

*Blakely* had an immediate impact on the practice of criminal defense.  *Blakely* clarified a rule first stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  *Blakely*, 542 U.S. at 301.  *Blakely* defined *Apprendi's* "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  *Id.* at 303 (emphasis in original).  The statutory maximum is not the maximum sentence allowed by statute after the judge finds additional facts but the maximum the judge may impose without any additional factual findings.  *Id.* at 303-04.

At the time Davis's appellate brief was filed in January of 2004, *Blakely* had not yet been decided by the United States Supreme Court.[2]  *Blakely* was decided after Davis filed his appellate brief but before the appellate court's decision in Davis's case.  Davis's appellate counsel could have raised any issues posed by *Blakely* by filing a motion  for leave to amend Davis's appellate brief before the court's decision or by filing an application for reconsideration after the court's decision.  Davis's appellate counsel had one month, from June 24, 2004, the date of the decision in *Blakely*, until July 24, 2004, the last day on which he could have filed a motion for reconsideration pursuant to Ohio App. R. 26(A), to

---

[2] Even though *Blakely* was decided after the filing of the appellate briefs, it was applicable to Davis's appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)(holding that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review).

raise a claim that Davis's sentence violated the holding in *Blakely*.

The five considerations described in *Mapes* applicable to this case lead to the conclusion that Davis's appellate counsel's performance fell below an objective standard of reasonableness when he failed to raise the issue that the court's sentence violated the holding in *Blakely*.[3] First, the omitted issue from *Blakely* was both significant and obvious. The omitted issue was significant because, as shown below, had the issue been raised on appeal there was more than a reasonable probability that Davis's sentence would have been overturned.  The issue raised by *Blakely's* definition of "statutory maximum" was also obvious because *Blakely* clarified the Supreme Court's earlier holding in *Apprendi*.  Prior to *Blakely*, criminal defense attorneys in Ohio had been trying to challenge the constitutionality of Ohio Rev. Code § 2929.14(B), the statute Davis was sentenced under, with the holding of *Apprendi*.  Ohio courts, however, consistently held that sentences within the statutory range set forth in § 2929.14 did not violate the Supreme Court's holding in *Apprendi*.  *See State v. Graber*, 2003 Ohio App. LEXIS 4828, 6-7 (Ohio Ct. App. 2003).  Thus, when the Supreme Court clarified the definition of "statutory maximum" for *Apprendi* purposes in *Blakely*, the issues arising from the holding of *Blakely* became obvious to criminal defense attorneys in Ohio.[4]

Second, there was no arguably contrary authority on the omitted issue to suggest to Davis's appellate counsel that he should not raise the issue with the court.

---

[3] Questions 4 through 6 are not relevant, and with respect to questions 7 through 9 there is no information to answer those questions.

[4] The court further notes that the *Blakely* decision was widely publicized and discussed not only in newspapers but in legal periodicals.

Third, the omitted issue from *Blakely* is clearly stronger than any of the other issues raised by Davis's appellate counsel.  As shown below, the argument that Davis's sentence was contrary to *Blakely* would probably have resulted in the overturning of Davis's sentence.

Fourth, the omitted issue was not addressed through any other assignment of error raised in the appellate court.  Davis's appellate counsel did not raise any issue with respect to the constitutionality of Davis's sentence.

Finally, the decision to omit this issue was unreasonable, and only an incompetent attorney would have made such a decision.  *Blakely* invalidated Davis's sentence as unconstitutional.  Failure to raise such an issue within the one month window provided by Ohio law in Davis's case "so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  For these reasons the performance of Davis's appellate counsel fell below the objective standard of reasonableness.

Respondent argues that because Davis's counsel had only a month to raise any issue from *Blakely*, Davis's counsel's performance did not fall below an objective standard of reasonableness.  This argument is without merit.  A month is more than sufficient time for an attorney to learn of a widely-publicized case; realize its implications; write what would be, at most, a three-page brief pointing out that his client's sentence ran counter to the holding in *Blakely*; and file the brief.

Respondent contends that Davis's appellate counsel's failure to predict the decision of *Blakely* does not make Davis's appellate counsel ineffective.  Davis's counsel did not have to predict the Supreme Court's decision in *Blakely* because *Blakely* was decided

16

during Davis's direct appeal.  Davis's appellate counsel did not need to predict *Blakely*, but merely act expeditiously once *Blakely* was decided.  This he failed to do.

Next, respondent argues that because the effect of *Blakely* on Ohio's sentencing guidelines was unsettled until 2006,[5] Davis's counsel should not have thought he had a reasonable chance of success on appeal.  While this argument might be tenable when there is contrary authority to suggest that an issue should not be raised, this was not the case shortly after *Blakely* when there was no contrary authority.  This argument, too, is without merit.

Davis also satisfies the second prong of *Strickland,* because there is more than a reasonable probability that but for his appellate counsel's deficient performance Davis would have prevailed on appeal.  At the time of Davis's conviction Ohio Rev. Code § 2929.14 ("§ 2929.14") governed sentencing in Ohio.  Section 2929.14(B) & (C) provided as follows:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G)[6] of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>
> (2) The court finds on the record that the shortest prison term will demean the

---

[5]  In early 2006 the Ohio Supreme Court held in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), that the statute Davis was sentenced under was unconstitutional as a result of the United States Supreme Court's holdings in *Apprendi* and *Blakely*.

[6]  Sections 2929.14(D) & (G) were not applicable to Davis's offense.

17

seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

(C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.

Section 2929.14(A)(2) provided that for a felony of the second degree "the prison term shall be two, three, four, five, six, seven, or eight years."

Davis was sentenced to the longest possible prison term for felonious assault, a felony of the second degree.  Because Davis was not a major drug offender or a repeat violent offender, the trial court could have sentenced Davis to the longest possible prison term only if it found that Davis committed the worst form of the offense and/or posed the greatest likelihood of committing future crimes.  Indeed, the trial court sentencing Davis explicitly found that anything less than the maximum sentence would demean the seriousness of his crime and would not protect society from future crimes by Davis.

At the time of Davis's sentencing, Ohio Rev. Code § 2929.12 ("§ 2929.12") governed the factors for courts to consider in felony sentencing when determining the seriousness of a crime and the likelihood of recidivism.  Section 2929.12 provided in relevant part:

 (A) Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code.  In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of  section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical

19

harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.

(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

(5) The offender shows no genuine remorse for the offense.

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3) Prior to committing the offense, the offender had led a law-abiding life for a

20

significant number of years.

(4) The offense was committed under circumstances not likely to recur.

(5) The offender shows genuine remorse for the offense.

Section 2929.12 provides that courts *shall* consider the factors enumerated in subsections (B) and (C), dealing with the seriousness of the offense, and subsections (D) and (E), dealing with the likelihood of recidivism.  Thus, at the time of Davis's sentencing Ohio law required to make explicit or implicit findings of fact regarding every factor enumerated in § 2929.12(B), (C), (D), & (E).  Some of these factors related to prior convictions and do not run contrary to the holdings in *Apprendi* and *Blakely*.  But most of the required findings of fact required by §§ 2929.14(B) & (C) and 2929.12(B), (C), (D), & (E) required judicial fact-finding of the very sort barred by *Blakely*.  It was for this reason that the Ohio Supreme Court overturned § 2929.14(B) & (C) as unconstitutional in light of *Blakely*.  Had Davis's appellate counsel argued that Davis's sentence violated the holding in *Blakely*, his sentence would have been overturned either immediately by the appellate court or later upon appeal to the Ohio Supreme Court.  Appellate counsel's failure to make this argument deprived Davis of appellate relief.

For these reasons the performance of Davis's appellate counsel constituted ineffective assistance of appellate counsel.  The magistrate judge recommends, therefore, that the court find that Davis was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments and that the court grant Davis's second ground for relief.

IV

21

For the reasons given above the magistrate judge recommends that the court grant

Davis's petition for a writ of habeas corpus with respect to Davis's second ground for relief

and vacate Davis's conviction unless the state of Ohio grants Davis a direct appeal within

90 days.[7]


Date:  August 25, 2006               /s/Patricia A. Hemann
                                     Patricia A. Hemann
                                     United States Magistrate Judge


OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within ten (10) days of receipt of this notice.  Failure to file objections within the
specified time waives the right to appeal the District Court's order.  See United States v.
Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g
denied, 474 U.S. 1111 (1986)

---

[7] Because the only constitutional violation before the court is the ineffective
assistance of *appellate* counsel, the appropriate remedy is a writ conditioned upon Ohio
courts granting a new direct appeal.  *See Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir.
2004)

22